# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**KEVIN DUNCAN HERRICK**
1601 Forbes Street
Rockville, MD 20851
(301) 830-2695
**Plaintiff,**

     **v.**

**STEVEN M. MAGUIRE**
1754 Lanier Place, NW          CIVIL ACTION NO._____
Apt. 302
Washington, DC 20009

<u>SERVE ON:</u>
Steven M. Maguire
1754 Lanier Place, NW
Apt. 302
Washington, DC 20009
**Defendant.**

## <u>COMPLAINT FOR RECOVERY OF MONIES OWED</u>

The Plaintiff, Kevin Duncan Herrick, proceeding <u>pro se</u>, alleges and states as follows:

### <u>NATURE OF THIS ACTION</u>

1. This case is about a contract under which Plaintiff provided funds to open a restaurant/lounge in downtown Washington, DC. Defendant used those funds, breached the contract, defrauded the Plaintiff, and failed to perform Defendant's obligations under the contract. Plaintiff seeks to recover monies owed to him under the contract, interest and expenses, and asks for punitive damages on account of Defendant's fraudulent and improper conduct.

2. In July, 2004, Plaintiff Kevin Duncan Herrick provided the sum of $40,000.00 (forty thousand dollars) to Steven M. Maguire for use in Maguire's business, Tea Room, LLC ("Tea Room").  At the time Herrick provided the funds, parties signed a contract (see Plaintiff's Exhibit A, "Receipt for funds", hereinafter Contract).[1]  Pursuant to the Contract, Herrick provided $40,000.00 for the purpose of opening a restaurant/lounge in downtown Washington, DC.  Herrick performed fully by transferring funds to Maguire. Maguire subsequently deposited Herrick's money in a business account at Adams National Bank maintained under the name of Tea Room, with Maguire as sole signatory on the bank account.

3. Under the Contract, Maguire was to open and operate a restaurant/lounge in downtown Washington, DC through his company, Tea Room.  Herrick was to remain a passive investor.  The Contract stipulated that Maguire would not use Herrick's money until an operating agreement had been concluded as contemplated at an earlier meeting with Maguire's attorney.

4. Notwithstanding Maguire's failure and refusal to abide by the terms of the Contract, Maguire used Herrick's money to open Science Club, a restaurant/lounge located in downtown Washington, DC at 1136 19th Street, NW.  Maguire never signed or otherwise executed an operating agreement with Herrick despite repeated requests.

5. Herrick seeks to have this Court (i) enter judgment against Defendant Maguire, and in Plaintiff Herrick's favor, in the amount owed under the Contract; (ii) enter judgment against Defendant Maguire, and in Plaintiff Herrick's favor, for punitive damages arising from Defendant Maguire's fraud, material misrepresentation, and bad faith; and (iv)

---

[1] Please note page numbers have been added to attachments by hand for reference purposes, A-1, A-2, etc.

liquidate Tea Room and appoint Plaintiff Herrick Receiver to accomplish the recovery of
monies owed Herrick and to pay outstanding Tea Room debts.

## PARTIES AND JURISDICTION

6. Kevin Duncan Herrick is an individual who is a citizen and resident of the state of
Maryland, Montgomery County.  Herrick resides at 1601 Forbes Street, Rockville,
Maryland in Montgomery County.

7. Steven M. Maguire is a citizen and resident of the District of Columbia.  Maguire
resides at 1754 Lanier Place #302, NW, Washington, DC.  Maguire is owner and operator
of Tea Room, LLC, a District of Columbia registered limited liability company, as well
as that company's founder.

8. This Court has subject matter jurisdiction over this action pursuant to 28 USC §1332
because the amount in controversy exceeds $75,000 exclusive of interest and costs, and
Plaintive is a citizen of the state of Maryland and Defendant is, upon information and
belief, a citizen and resident of the District of Columbia.

9. Venue of this action is properly laid in this judicial district pursuant to 28 USC
§1391(a) because these causes of action arose in this judicial district and the Defendant
is, upon information and belief, a citizen and resident of this judicial district.

## GENERAL FACTUAL ALLEGATIONS

**A. Maguire induces Herrick to provide $40,000 to Maguire to open a
restaurant/lounge in Washington, DC**

10.   On July 3, 2004, Herrick and Maguire signed the Contract under whose terms
Herrick provided $40,000.00 (forty thousand dollars) to Maguire.  The purpose for the

provision of these funds was to open a restaurant/lounge in the downtown Washington, DC area.

11.   By the terms of the Contract, Maguire was not to use or otherwise obligate as a deposit or as collateral Herrick's funds until an operating agreement had been signed by Herrick and Maguire as contemplated in an earlier meeting with Maguire's attorney. Based on Maguire's written assurances, Herrick transferred the funds to Maguire who then deposited them into Tea Room's business banking account.

12.   Herrick and Maguire discussed terms of an operating agreement such as the one contemplated in an earlier meeting with Maguire's attorney, and Herrick drafted several versions of a proposed operating agreement (see Plaintiff's Exhibit B).  Notwithstanding Herrick's good faith efforts to negotiate and agree to the terms of an operating agreement, no operating agreement was ever concluded or executed.  With complete disregard for his agreed-to obligation under the Contract, Maguire filed his legal status as sole owner of Tea Room, refused to change Tea Room's status to a partnership, and maintained his position of sole decision-maker with regard to daily operations and strategic decisions, and, most importantly, the disposition of Herrick's funds.  When Maguire transferred Tea Room's business banking account to Eagle Bank, Maguire remained the sole signatory on Tea Room's bank account.

**B. Maguire breaches contract by using Herrick's funds without concluding an operating agreement.**

13.   In breach of the Contract, on or about October 3, 2005, Maguire used Herrick's money without executing or otherwise concluding an operating agreement.  That same date, Maguire purchased an existing business' interests in a Washington, DC restaurant,

Thai Bistro, Inc. ("Thai Bistro"), and negotiated a lease on Thai Bistro's existing premises located at 1136 19th Street, NW, Washington, DC ("1136 19th Street"). Maguire also secured additional funding in the form of a Small Business Administration loan through Eagle Bank ("SBA Loan").

14.   Without authorization from Herrick, as part of the purchase of Thai Bistro, Maguire moved Tea Room's bank account, including Herrick's $40,000.00, from Adams National Bank to Eagle Bank.

15.   Improperly, without any authorization from Herrick and in breach of the plain language terms of the Contract, Maguire used Herrick's funds to conclude the purchase of Thai Bistro's interests, negotiate a lease for the location at 1136 19th Street, and to acquire the SBA Loan. All of these transactions: the purchase of Thai Bistro's interests, the negotiation of the Lease, and the acquisition of the SBA Loan were necessary for and used for the purpose of establishing a restaurant/lounge called "Science Club" under the ownership of Tea Room, with Maguire, improperly and in violation of the plain language of the Contract, maintaining legal status as sole proprietor and operator.

16.   At the time Maguire improperly used Herrick's funds in breach of the Contract, Herrick reiterated the importance of a signed operating agreement and again sought in good faith to have Maguire execute and conclude an operating agreement, Herrick resubmitted his proposed operating agreement to Maguire. Maguire failed and refused to sign this or any other operating agreement.

17.   Improperly and without approval, Maguire used Herrick's funds in violation of the plain language terms of the Contract. Prior to October 3, 2005, Maguire told Herrick that he had negotiated a lease for 1136 19th Street and had placed a substantial deposit in

5

order to secure the space. Herrick's funds had been pledged as security for an unauthorized, incomplete business transaction.

18. The conclusion of the entire transaction to assume operation of Thai Bistro's restaurant at 1136 19th Street involved at least negotiating the lease, purchasing Thai Bistro's existing interests and equipment, acquiring the SBA Loan, and transferring or assuming Thai Bistro's licenses including its license to sell alcoholic beverages on premises (ABC License). Since the ABC license was crucial to the operation of a restaurant/lounge and required a negotiated lease contract, and since the SBA Loan required significant cash be infused into the business, Maguire reported to Herrick that he had used or obligated Herrick's investment in order to begin the transaction in the form of deposits and other transactional necessities. Maguire reported that Herrick's $40,000.00 might be forfeit to other parties if the business transaction did not close.

**C. Maguire fraudulently induces Herrick to provide additional funds.**

19. Maguire reported to Herrick that Douglas Development, the landlord with whom he was in process of negotiating a lease for 1136 19th Street, NW, required an additional, previously unanticipated and unstipulated additional security deposit of approximately $13,000 in order to conclude the transaction. Maguire characterized this as a change made by the landlord in the agreement to lease the space, as a requirement to get the space to operate the restaurant/lounge, and as a strong arm move by the landlord against which Maguire and Tea Room had no option but to comply.

20. Maguire reported that all of Herrick's money had been used, spent, or obligated and that Tea Room had no funds to pay for this cost and that the landlord would not give Tea Room or Maguire a lease on the space at 1136 19th Street without the additional funds.

As Maguire then told Herrick, all of Herrick's money had been obligated to a business deal which, due to the landlord's changing the terms of the agreement, was in jeopardy of being lost. Maguire pointed out that the landlord, a billionaire, could afford to take advantage of Maguire and that Maguire could not afford to sue to recover against the landlord in the event of the landlord's wrongdoing because Maguire lacked funds for a lawsuit. Maguire characterized the situation as a rich, powerful landlord unscrupulously taking advantage of a would-be small businessman (Maguire) and changing the terms of the business deal to require more funds as security deposit.

21.    Maguire reported that there was no alternative but to satisfy the landlord's unreasonable, additional demands. Maguire told Herrick that additional investment would be required to avoid losing the opportunity to open the restaurant and to avoid the loss of Herrick's $40,000.00. In an attempt to safeguard his $40,000.00 and under pressure from Maguire, Herrick borrowed on credit the additional sum of $17,000.00 (seventeen thousand dollars) and provided Maguire with these additional funds in order to satisfy the landlords' additional demands.

22.    Tea Room received the additional $17,000.00 from Herrick and Maguire concluded the transaction to acquire Thai Bistro's interests, the Lease, and the SBA Loan. Once the SBA Loan funds were received by Tea Room, Herrick received $17,100.00 to repay the loan he had taken for $17,000.00 and to cover transaction costs associated with borrowing the money. Maguire reported that Tea Room was unable to return Herrick's $40,000.00 and continued to refuse to sign or execute or negotiate an operating agreement according to the terms of the Contract.

23.   Once Maguire had used these additional funds to conclude his acquisition of Thai Bistro's interests, the Lease on 1136 19th Street, and the SBA Loan so that Tea Room could open Science Club, Maguire confessed that he had lied about the purpose of the additional funds and about the reason for their need.  Maguire confessed that he had defrauded Herrick and that the reason he needed the additional funds was to pay his own personal back taxes and to acquire a certificate of good standing with the Washington, DC government.  Maguire told Herrick the certificate of good standing was required for business and ABC licenses for the restaurant/lounge.  Incredibly, even as he continued to improperly hold Herrick's $40,000.00, Maguire had told Herrick that his entire $40,000.00 was in jeopardy and fraudulently induced Herrick to provide an additional $17,000.00 in funds so that Maguire could pay his own, personal back taxes.

**D. In an attempt to safeguard his $40,000.00, Herrick functions as Tea Room's bookkeeper and office manager.**

24.   In early 2006, Maguire informed Herrick that, although Science Club was generating revenue and accumulating cash, Maguire was unable to pay the business' bills on time.  Herrick agreed to work as office manager for Science Club, taking the funds and paying off the company's outstanding bills.  To protect his investment, Herrick began working to pay off the company's outstanding bills using Science Club revenue as directed by Maguire.  Herrick's primary responsibility in this role was to act as bookkeeper and to mail payments for bills.

25.   On or about February 14, 2006, Herrick and Maguire agreed that Herrick would receive $1,000 per week for his services as bookkeeper.  This money was compensation provided Herrick so that he could focus on acting as Science Club's bookkeeper.  Herrick

and Maguire specifically agreed that this money was not to be considered profit sharing or in any way balanced against Herrick's $40,000 provided under the Contract. At this time and all times subsequent and prior, Maguire maintained legal status as sole proprietor of Tea Room despite repeated demands from Herrick that Maguire execute an operating agreement according to the terms of their Contract.

26.    In early 2007, Herrick and Maguire both received an equal amount of cash as a profit share from Tea Room. Each received $3,200.00 in cash, Herrick's $3,200.00 was to be balanced against his $40,000.00. This was the only occasion of any profit sharing or any money received by Herrick that was in any way balanced against his $40,000.00.

27.    After serving as Tea Room's bookkeeper for more than a year, on or about March 15, 2007, Herrick provided Maguire notice that he would cease operating as Science Club's bookkeeper and cease drawing the $1,000 per week they had agreed upon for that purpose. Herrick ceased drawing compensation and ceased functioning as bookkeeper as of April 15, 2007.

**E. Herrick reiterates demands for operating agreement.**

28.    After ceasing to operate as Tea Room's bookkeeper, Herrick reiterated his demand for a signed operating agreement. Although Maguire agreed verbally to sign an operating agreement, Maguire never signed an operating agreement, although Herrick, in a good faith effort to execute an operating agreement per the terms of the Contract, once again provided Maguire several operating agreement proposals.

29.    In response to Herrick's demand that he execute an operating agreement per the terms of their Contract, Maguire demanded return of all Tea Room documents and property. At Maguire's request, Herrick returned all documents and property belonging

to Tea Room on or about May 21, 2007.  Despite repeated demands by Herrick and despite Maguire's statement of his intention to do so on several occasions (see Plaintiff's Exhibit C, email of May 2, 2007, email of May 30, 2007, both stating a substantive response from Maguire to Herrick's demands is forthcoming), Maguire never substantively responded to Herrick's demands for a signed operating agreement or to Herrick's demand Maguire return his $40,000.00.

**F. Herrick exhausts remedies and initiates suit to recover monies owed and damages.**

30.   By certified mail in a letter dated June 6, 2007, Herrick made clear, written demand for return of his $40,000 investment per the terms of the Contract (see Plaintiff's Exhibit D, a copy of the demand letter received and the postal receipts).  Maguire received the demand at his home but refused to receive a copy sent to 1136 19th Street (see Plaintiff's exhibit E, a photocopy of the refused copy sent to Maguire at 1136 19th Street).  Under the terms of the Contract, since Maguire had refused to sign or otherwise execute an operating agreement with Herrick, the Contract provided Herrick could demand return of his $40,000.00 and Maguire must return the $40,000.00 within seven business days of that demand.  Having not received any funds or any communication from Maguire by June 26, 2007, Herrick decided to initiate this suit.

<u>**COUNT I**</u>
(Monies Owed – Breach of Contract)

31.   The allegations contained in paragraphs 1 through 29 are incorporated by reference as if more fully set forth herein.

32.   Pursuant to the terms of the Contract, Maguire has a duty to refrain from using Herrick's $40,000 until an operating agreement has been concluded as contemplated in earlier meetings with Maguire's attorney.

33.   On or about October 3, 2005, Maguire used Herrick's money to gain a lease on 1136 19th Street, to acquire additional funding in the form of an SBA loan, and to fund opening Science Club, a restaurant/lounge located in downtown Washington, DC.  Maguire is in breach of the Contract as of October 3, 2005.  Herrick requests that this Court award him interest on his $40,000.00 from that date, at the maximum rate allowed by law.

34.   On or about June 6, 2007, Herrick demanded return of his investment pursuant to the Contract.  Maguire failed to return Herrick's $40,000 within seven business days, Maguire is again in breach of the Contract for a second time, as of June 20, 2007.  In the event the Court determines not to award Herrick interest on his $40,000.00 from the date of the initial breach on October 3, 2005, Herrick asks the Court to award interest at the maximum rate allowed by law as of the date of this additional breach, June 20, 2007.

35.   Herrick is entitled to payment of all amounts due under the Contract, including the principal sum, any applicable interest, and any other monies this Court determines appropriate.


## COUNT II

(fraud)

36.   The allegations contained in paragraphs 1 through 34 are incorporated by reference as if more fully set forth herein.

37.    Maguire represented to Herrick that Maguire would match Herrick's investment with cash of his own.  In fact, when Maguire used Herrick's investment to open Science Club on or about October 3, 2005, Maguire had little or no money to invest of his own. What money Maguire did have to invest was insignificant as he also owed approximately $13,000 in back taxes and defrauded Herrick into providing an additional $17,000.00 to complete the initial business transaction.  A necessary precondition to the opening of Science Club was Maguire's attainment of a certificate of good standing and repayment of outstanding tax obligations.

38.    Maguire knew of his outstanding tax obligation, knew of his lack of funds, and kept both of these facts secret from Herrick, materially misleading Herrick with the intention of inducing Herrick to submit his $40,000.00 to Maguire's control.  Under the Contract, Herrick is entitled to demand return of his funds within seven business days prior to the conclusion of an operating agreement and, afterward, according to the terms of that operating agreement.  Maguire's deceit and misrepresentation induced Herrick into providing funds to Maguire under false pretenses.

39.    Maguire fraudulently induced Herrick into providing the initial $40,000.00 by misrepresenting his own financial contribution and fraudulently induced Herrick into providing an additional $17,000.00 after he had initiated the transaction to acquire the Lease on 1136 19th Street, Thai Bistro's assets and interests, and the SBA Loan.

40.    After Maguire had breached the Contract and used Herrick's investment, Maguire told Herrick that Tea Room needed more money to complete the complex transaction to gain a lease on 1136 19th Street, purchase Thai Bistro, Inc.'s existing assets, get additional funding in the form of an SBA loan, and open Science Club.  Maguire

fabricated a story designed only to deceive Herrick into providing additional funds. Maguire told Herrick that the landlord was requiring additional funds in order to secure the lease when in fact, additional funding was required to pay Maguire's own, personal, outstanding taxes.

41.   Maguire told Herrick that he had used Herrick's money for deposits and other business uses associated with the transaction and that Herrick's entire investment was at risk of being lost.  In order to protect his $40,000.00 that Maguire had used in breach of the Contract, Herrick in good faith provided $17,000 to allegedly satisfy the landlord.  It was not until the transaction was complete and this money, too, had been spent that Maguire confessed his fraud.

42.   Herrick seeks compensation for damages incurred as a result of Maguire's fraud and asks this Court to award punitive damages of $160,000.00 (one hundred sixty thousand dollars).

## COUNT III

### (conversion)

43.   The allegations contained in paragraphs 1 through 41 are incorporated by reference as if more fully set forth herein.

44.   Maguire took money out of Tea Room in the form of: cash from revenue, a number of cashier's checks drawn on Tea Room's bank account, other withdrawals from the bank account, and by his use of the company's debit card.

45.   Maguire is responsible for substantiating Tea Room's valid business expenses and for substantiating any reasonable salary to which he is entitled.

46.   Since Maguire's stated objective was to cover up his own income from Tea Room, Maguire intentionally and knowingly obscured the money he improperly took from Tea Room.

47.   Herrick seeks an accounting to determine the amount of all unsubstantiated expenditures and money taken by Maguire.  Herrick seeks attribution of these unsubstantiated expenses as Maguire's own personal income.  Furthermore, Herrick seeks recovery from Maguire of any income in excess of a reasonable salary due Maguire.  This money Maguire improperly took from Tea Room should properly have been given to Herrick since Herrick provided the funds to start the business and since Herrick is entitled to expect a return on the funds Maguire improperly withheld and improperly used in violation of the Contract.

## COUNT IV

### (quantum meruit, in the alternative)

48.   The allegations contained in paragraphs 1 through 46 are incorporated by reference as if more fully set forth herein.

49.   In the alternative, Herrick's investment in Tea Room, albeit under fraudulent circumstances, entitles him to equity ownership in Tea Room and Science Club.

50.   No operating agreement was ever concluded between Herrick and Maguire because Maguire would never agree to sign any of the proposals.  If this Court determines that an operating agreement had somehow been concluded, Herrick asks this Court to set aside

that operating agreement and to reform an operating agreement on equitable terms. Maguire's material misrepresentations and fraud used to induce Herrick into providing first $40,000.00 and then an additional $17,000.00 and the fraud which formed the basis for negotiation of terms for an operating agreement entitle Herrick to a majority ownership of Tea Room.

51.   Since Herrick invested all or nearly all of the cash to begin operation of Science Club, Herrick asks this Court to award him 85% (eighty-five percent) equity ownership of Tea Room and Science Club, or another percentage this Court determines equitable given the increased risk and continued investment due to Maguire's fraud and undisclosed insolvency.

52.   Regardless of percentage ownership allocation, Herrick requests this Court order he hold the position of Managing Member of Tea Room and Science Club with all authority to make strategic and operational decisions with unilateral authority.

WHEREFORE, Plaintiff Kevin Duncan Herrick respectfully requests that this Court enter an Order

i. on Count I, against Steven M. Maguire, and in favor of Kevin Duncan Herrick for all sums due and owing under the Contract;

ii. on Count II, against Steven M. Maguire, and in favor of Kevin Duncan Herrick for all sums due and owing under the Contract;

iii.   on Count III, against Steven M. Maguire, and in favor of Kevin Duncan Herrick for punitive damages in the amount of $100,000 or an amount this Court determines appropriate;

iv.   on Count IV, against Steven M. Maguire, and in favor of Kevin Duncan Herrick for equity ownership of 85% or an amount this Court determines appropriate, and that Kevin Duncan Herrick be declared sole, Managing Member of Tea Room, LLC and Science Club;

v. to dissolve Tea Room, LLC and liquidate its assets, appointing Kevin Duncan Herrick as Receiver with all authority to take any measures necessary to the execution of liquidation;

vi.   granting Kevin Duncan Herrick such other and further relief as the Court deems just and appropriate.

Dated: September 21, 2007.

Respectfully submitted,

Kevin Duncan Herrick
DC Bar #: 497519*
1601 Forbes Street
Rockville, MD 20851-1409
Tel: (301) 830-2695
<u>pro se</u> Plaintiff

*Although Mr. Herrick is an attorney admitted to practice law in the District of Columbia and is representing himself on a <u>pro se</u> basis, he is not admitted to this Court.

# CIVIL COVER SHEET

**JS-44**
**(Rev.1/05 DC)**

## I (a) PLAINTIFFS
HERRICK, KEVIN DUNCAN

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Montgomery
**(EXCEPT IN U.S. PLAINTIFF CASES)**
*88686*

## DEFENDANTS
MAGUIRE, STEVEN M,

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: _____

Case: 1:07-cv-01675
Assigned To : Robertson, James
Assign. Date : 9/21/2007
Description: Pro Se General Civil

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Pro Se → KEVIN HERRICK
1601 FORBES ST, ROCKVILLE, MD 20851
301 830 2695

## II. BASIS OF JURISDICTION
**(PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☒ | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency
Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☒ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☒ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

*(1)*

| ☐ **G.** *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ **H.** *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **I.** *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **J.** *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ **K.** *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ **L.** *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ **M.** *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ **N.** *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC § 1332 diversity, common law contract & Fraud

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS    ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ 200,000.00    Check YES only if demanded in complaint    JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES ☒ NO    If yes, please complete related case form.

DATE 9/21/2007    SIGNATURE OF ATTORNEY OF RECORD    *[signature]*    pro se

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

μ

# Plaintiff's Exhibit A

One page, A-1
A copy of the signed Contract between Herrick and Maguire.

Receipt for funds

This document acknowledges receipt of the sum of $40,000.00 paid by Kevin Herrick to Steve Maguire. This money is to be placed in a bank account for the purpose of securing financing to open a bar, the Tea Room. No funds from this $40,000.00 will be disbursed or used as security or in any other way until such time as Steve Maguire and Kevin Herrick conclude an Operating Agreement as contemplated during their previous meeting with Steve Maguire's lawyer. The lawyer estimated the Operating Agreement would be ready some time in mid to late July, 2004.

Kevin Herrick may require the prompt return (within 7 business days) of these funds at any time prior to the signing of the Operating Agreement and after according to that agreement's terms. This request is to be made in writing and may be delivered in person by Kevin Herrick or his delegate to Mr. Maguire. Mr. Maguire agrees not to use the money until an Operating Agreement has been concluded and then only according to the terms of that agreement.

The sum of money is forty thousand dollars ($40,000.00) paid by personal check in the amount of $35,000.00 and a check made payable to Kevin Herrick (which he will sign over) for $5,000.00 drawn on the Bank of America in Atlanta, GA.

Parties agree to arbitrate (binding arbitration) any disputes under this agreement in the District of Columbia according to the laws of Washington, DC through an agency certified to handle such commercial disputes. In the event of a disagreement over forum, choice of law, or arbitration body, Kevin Herrick may make this determination in accordance with the terms of this binding arbitration clause.

DATE: 07/03/04

Signed

_____
Kevin Herrick
07/03/04

_____
Steve Maguire
07/03/04

A - 1


( photocopy )

# Plaintiff's Exhibit B

Six pages, B-1 through B-6
A photocopy of Herrick's proposals for operating agreements.

12/19/2004
Kevin Duncan Herrick
Operating Agreement

Mr. Herrick agrees to provide Tea Room, LLC the sum of $40,000.00 for the purpose of opening a restaurant/bar/lounge in Washington, DC during 2005. The Tea Room will use these funds at its discretion for the purpose of opening a bar in Washington, DC. These funds are currently in the Tea Room's business account and have been transferred and received by Steve Maguire on behalf of Tea Room. Tea Room, LLC and Steve Maguire hereby acknowledge receipt of these funds.

The time frame for beginning construction on the bar in Washington is targeted for 2005.

Previously, Mr. Herrick and Mr. Maguire agreed that the funds transferred to Tea Room's account by Mr. Herrick would not be used without a signed, written "Operating Agreement". This document will serve as that "Operating Agreement" with limitations mentioned below:
1) Mr. Herrick's $40,000.00 is not to be used until Tea Room has secured financing for its entire build-out costs as per the business plan in effect 12/18/2004 (attached). This amount is approximately $320,000.00, inclusive of Mr. Herrick's $40,000.00.
2) Mr. Maguire will inform Mr. Herrick immediately upon the discovery of threats to the successful completion of the opening of the bar on time and according to budget.
3) The bar is to be located in the 1876 M St., NW location. A change of venue will require amendment to this document as authorization for use of Mr. Herrick's $40,000.00.

Mr. Herrick understands that the Tea Room, LLC has three main goals:
1) maintain a stable and profitable operation,
2) pay off outstanding debts,
3) achieve the release of any investor-provided collateral for loans or lines of credit.

Mr. Herrick understands that profits will be paid at times and in amounts determined by the Tea Room to:
1) maximize tax advantages in consultation with tax professionals,
2) conform to legal requirements in consultation with legal professionals,
3) reduce outstanding debts and maximize the financial health of Tea Room, LLC.

Mr. Herrick will receive:
1) ownership in the Tea Room, LLC equal to 20%
2) profit sharing equal to his percentage of ownership in Tea Room, LLC
   a. Mr. Herrick understands that profits for the purpose of profit sharing do not include any accelerated payments toward the relief of outstanding debts and the release of investor-provided property as collateral.

B-1

Steve Maguire's option to purchase up to 75% of Mr. Herrick's shares:

1) Steve Maguire retains the option to purchase all of Mr. Herrick's outstanding shares in Tea Room, LLC at his sole discretion provided:
   a. at least 36 months have passed since the Tea Room's first day of operation (730 days after the Tea Room opens), AND
   b. Mr. Herrick has received his initial investment from Tea Room in the form of dividends ($40,000.00), AND
   c. Mr. Herrick retains a 5% ownership in Tea Room in perpetuity, OR
   d. Mr. Herrick so requests in writing.
2) The purchase price reflects a percentage of the profit for either the preceding tax year or preceding twelve calendar months, whichever is greater, equal to the percentage of ownership. Note that the purchase price need not be transferred in cash immediately but may be paid over the course of a three month period.
3) In the event of the sale of Tea Room, LLC in part or in whole or Tea Room's interest in any of its holdings, Mr. Herrick is to receive a percentage of the purchase price equal to his percentage of ownership in Tea Room but not less than 5% in any case.

Mr. Herrick's responsibilities to the Tea Room, LLC:

1) occasional computer software and hardware consultancy assistance as needed,
2) occasional automation, accounting, record-keeping, and reporting consultancy as needed,
3) occasional operational assistance and day-to-day operational assistance as necessary to Tea Room, LLC and convenient to Mr. Herrick
4) additional services provision by agreement with Tea Room, LLC at market rates.

Mr. Maguire understands that:

1) Mr. Herrick is not an attorney licensed to practice in any jurisdiction within the United States,
2) Mr. Herrick does not, cannot, and will not practice law in the District of Columbia without first becoming a duly licensed member of the DC Bar,
3) No attorney-client relationship or privilege exists between Mr. Maguire and Mr. Herrick,
4) Mr. Herrick is not Tea Room, LLC's legal counsel or in any way obligated to perform legal work or give legal advice to Tea Room at present or in the future, regardless of any government or court authorization to do so.
5) Should Mr. Herrick acquire attorney status in Washington, DC or any other jurisdiction, he will only form an attorney-client relationship with Mr. Maguire or Tea Room, LLC after both parties have signed a written agreement to that effect and will only serve as Tea Room, LLC's counsel after indicating his willingness to do so in writing.

Mr. Herrick MAY NOT:

1) sell, mortgage, give, transfer, promise, or otherwise obligate his ownership in Tea Room, LLC;

B-2

2) represent Tea Room, LLC as an agent empowered to make purchases or obligations unless specifically authorized in advance, in writing, by Steve Maguire.

Note on decision-making and operational management:
1) with regard to day-to-day operation of the business, Steve Maguire retains absolute authority. This includes but is not limited to: hiring and firing staff, vendor selection and relationships, menu selection, hours of operation, and special events.

This document reflects the understanding, in common language, between Steve Maguire (representing Tea Room, LLC) and Kevin Duncan Herrick regarding an exchange of Mr. Herrick's $40,000.00 and the release of said funds for use by Tea Room, LLC. It will be memorialized formally at a later date once financing is secured.

B-3

3 January 2005
Kevin Duncan Herrick
Operating Agreement

Mr. Herrick agrees to provide Tea Room, LLC the sum of $40,000.00 to be used at its discretion for the purpose of opening a restaurant/bar/lounge in Washington, DC during 2005. These funds are currently in Tea Room's business account and have been received and acknowledged by Steve Maguire on behalf of Tea Room.

The time frame for beginning construction on the bar in Washington is targeted for 2005.

Mr. Herrick and Mr. Maguire agree that the funds transferred to Tea Room's account by Mr. Herrick will only be used in accordance with this Operating Agreement and with respect to the limitations mentioned below:
1) Mr. Herrick's $40,000.00 is not to be used until Tea Room has secured financing for its entire build-out costs as per the business plan in effect 12/18/2004 (attached). This amount is approximately $320,000.00, inclusive of Mr. Herrick's $40,000.00.
2) Mr. Maguire will inform Mr. Herrick immediately upon the discovery of threats to the successful completion of the opening of the bar on time and on budget.
3) The bar is to be located in the 1817 M Street NW. A change of venue will require amendment to this document as authorization for use of Mr. Herrick's $40,000.00.

Mr. Herrick understands that the Tea Room, LLC has three main goals:
1) maintain a stable and profitable operation,
2) pay off outstanding debts,
3) achieve the release of any investor-provided collateral for loans or lines of credit.

Mr. Herrick understands that profits will be paid at times and in amounts determined by the Tea Room to:
1) maximize tax advantages in consultation with tax professionals,
2) conform to legal requirements in consultation with legal professionals,
3) reduce outstanding debts and maximize the financial health of Tea Room.

Tea Room understands that Mr. Herrick is due:
1) ownership in the Tea Room equal to 15%
2) profit sharing equal to his percentage of ownership in Tea Room, LLC
   a. Mr. Herrick understands that profits for the purpose of profit sharing do not include any accelerated payments toward the relief of outstanding debts and the release of investor-provided property as collateral.

B-4

Tea Room retains the option to purchase all of Mr Herrick's shares in Tea Room, LLC, provided:

1) at least 36 months have passed since the Tea Room's first day of operation (1095 days after the Tea Room opens), AND
2) Mr. Herrick has received his initial investment from Tea Room in the form of dividends ($40,000.00), AND
3) Mr. Herrick retains a 5% ownership in Tea Room in perpetuity, OR
4) Mr. Herrick so requests in writing.

The purchase price for outstanding shares is non-inclusive of any normal profits due to Mr Herrick. The price paid will reflect the percentage of profit for either the preceding tax year or preceding twelve calendar months, whichever is greater, equal to his percentage of ownership. The purchase price need not be transferred in cash immediately but may be paid over the course of a three-month period commencing on purchase date.

In the event of the sale of Tea Room, LLC in part or in whole or Tea Room's interest in any of its holdings, Mr. Herrick is to receive a percentage of the purchase price equal to his percentage of ownership in Tea Room but not less than 5% in any case.

Mr. Herrick's responsibilities to the Tea Room, LLC:

1) occasional computer software and hardware consultancy assistance as needed,
2) occasional automation, accounting, record-keeping, and reporting consultancy as needed.

Any additional service provision agreed to with Tea Room will be compensated at market rate.

Mr. Herrick MAY NOT:

1) sell, mortgage, give, transfer, promise, or otherwise obligate any part of his ownership in Tea Room;
2) represent Tea Room as an agent to make purchases or otherwise obligate Tea Room in any way unless specifically authorized in advance and in writing by Steve Maguire.

Both Tea Room, LLC and Mr. Maguire understand and agree to the following:

1) Mr. Herrick is not an attorney licensed to practice in any jurisdiction within the United States,
2) Mr. Herrick does not, cannot, and will not practice law in the District of Columbia without first becoming a duly licensed member of the DC Bar,
3) No attorney-client relationship or privilege exists between Mr. Maguire and Mr. Herrick,
4) Mr. Herrick is not Tea Room, LLC's legal counsel or in any way obligated to perform legal work or give legal advice to Tea Room at present or in the future, regardless of any government or court authorization to do so.
5) Should Mr. Herrick acquire attorney status in Washington, DC or any other jurisdiction, he will only form an attorney-client relationship with Mr. Maguire or



Tea Room, LLC after both parties have signed a written agreement to that effect and will only serve as Tea Room, LLC's counsel after indicating his willingness to do so in writing.

Note on decision-making and operational management:

1) Steve Maguire retains absolute authority regarding all business operations. Including, but is not limited to: hiring/firing staff; vendor use and selection; any and all business relationships; menu; hours of operation; and special events.

-------------------------------------------------------------

THIS DOCUMENT REFLECTS THE UNDERSTANDING, IN COMMON LANGUAGE, BETWEEN STEVE MAGUIRE (REPRESENTING TEA ROOM, LLC) AND KEVIN DUNCAN HERRICK REGARDING AN EXCHANGE OF MR. HERRICK'S $40,000.00 AND THE RELEASE OF SAID FUNDS FOR USE BY TEA ROOM, LLC.  IT WILL BE MEMORIALIZED FORMALLY AT A LATER DATE ONCE FINANCING IS SECURED.

-------------------------------------------------------------

B - 6

# Plaintiff's Exhibit C

Two pages, C-1 through C-2
E-mails from Maguire to Herrick promising a substantive response to
Herrick's demands.



**Kevin Herrick <kevinduncanherrick@gmail.com>**

## Fwd: Re: paperwork
1 message

**Kevin Herrick <kdh2@gwu.edu>**                                          **Wed, Jun 6, 2007 at 6:23 AM**
To: kevinduncanherrick@gmail.com

---------- Forwarded message ----------
From: steve maguire <smaguire@mail.com>
To: Kevin Herrick <kdh2@gwu.edu>
Date: Wed, 02 May 2007 18:35:40 -0500
Subject: Re: paperwork
Kevin,

I have received all 3 of your emails, one per day since Monday, 30 April. My apologies for any perceived slow
response on your side of things. We have been very busy adjusting to the latest changes at Science Club. I
plan on having a comprehensive reply to all of your emails and attachments by early next week.

Steve

C-1



Kevin Herrick <kevinduncanherrick@gmail.com>

## please
2 messages

---

**Kevin Herrick <kevinduncanherrick@gmail.com>**                     **Wed, May 30, 2007 at 2:15 PM**
To: scienceclubdc@gmail.com

could you at least have the decency to forward personal inquiries to me if, for instance, my friend's dad calls looking for me?

I mean, for crying out loud, I DID NOT DO ANYTHING TO YOU.

please feel free to give personal inquiries my cell phone number:
301 830 2695

thanks

Kevin

---

**Science Club <scienceclubdc@gmail.com>**                     **Wed, May 30, 2007 at 2:54 PM**
To: Kevin Herrick <kevinduncanherrick@gmail.com>

absolutely.

i'm half way thru a response to your last email.

steve
[Quoted text hidden]
--
_____
www.ScienceClubDC.com
www.myspace.com/scienceclubdc

---

C-2

# Plaintiff's Exhibit D

Four pages, D-1 through D-4
A copy of Herrick's demand letter and the postal receipts for delivery to Maguire.

 Steven Maguire
1754 Lanier Place #302
Washington, DC 20009

Steven Maguire
Science Club
1136 19th Street, NW
Washington, DC 20036

Wednesday, June 6, 2007

Steve,

Please return my $40,000.00 per our agreement.  I attach a copy of that agreement, which
stipulates that, upon request, you must return my $40,000.00 within seven business days.

This serves as notice of my request and demand for the return of my $40,000.00 pursuant
to our agreement.

Sincerely,

Kevin Herrick
1601 Forbes Street
Rockville, MD 20851

D - 1

Photocopy

```
              TWINBROOK PO
           ROCKVILLE, Maryland
               208519998
             1050050851 -0094
06/05/2007    (301)838-2934    10:57:43 AM

                Sales Receipt
Product          Sale  Unit        Final
Description      Qty   Price        Price

WASHINGTON DC 20036                  $0.41
Zone-1 First-Class
Letter
0.60 oz.
Certified                            $2.65
Label #:     70063450000186443252
                                 ========
Issue PVI:                           $3.06

WASHINGTON DC 20009                  $0.41
Zone-1 First-Class
Letter
0.60 oz.
Certified                            $2.65
Label #:     70063450000186443269
                                 ========
Issue PVI:                           $3.06

USA Mailbx      1    $4.95          $4.95
Clip
Disp/Bnk

Total:                              $11.07

Paid by:
Cash                                $11.12
Change Due:                         -$0.05

Order stamps at USPS.com/shop or call
1-800-Stamp24.  Go to USPS.com/clicknship
to print shipping labels with postage.
For other information call 1-800-ASK-USPS.

Bill#: 1000601538233
Clerk: 23

   All sales final on stamps and postage.
   Refunds for guaranteed services only.
          Thank you for your business.
```


D-2

**U.S. Postal Service**
**CERTIFIED MAIL₁ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com₀

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ $0.41 |
| Certified Fee | $2.65 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $3.06 |

Postmark Here

7006 3450 0001 8644 3252

Sent To: Steven Maguire Science Club
Street, Apt. No.; or PO Box No. 1136 19th St, NW
City, State, ZIP+4 WASHINGTON, DC 20036

PS Form 3800, August 2006

**U.S. Postal Service**
**CERTIFIED MAIL₁ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com₀

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ $0.41 |
| Certified Fee | $2.65 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $3.06 |

Postmark Here

7006 3450 0001 8644 3269

Sent To: Steven Maguire
Street, Apt. No.; or PO Box No. 1754 Lanier PL #302
City, State, ZIP+4 WASHINGTON, DC 20009

 **UNITED STATES POSTAL SERVICE**®

Home | Help

Track & Confirm

# Track & Confirm

### Search Results

Label/Receipt Number: 7006 3450 0001 8644 3269
Detailed Results:

- **Delivered, June 06, 2007, 1:11 pm, WASHINGTON, DC 20009**
- **Arrival at Unit, June 06, 2007, 7:34 am, WASHINGTON, DC 20009**
- **Acceptance, June 05, 2007, 10:56 am, ROCKVILLE, MD 20851**

( < Back )          ( Return to USPS.com Home > )

Track & Confirm

Enter Label/Receipt Number.

---

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   ( Go > )

---

 **POSTAL INSPECTORS**
Preserving the Trust

site map    contact us    government services    jobs    **National & Premier Accounts**
Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy





UNITED STATES
POSTAL SERVICE®

Home | Help

Track & Confirm

# Track & Confirm

### Search Results

Label/Receipt Number: **7006 3450 0001 8644 3269**
Status: **Delivered**

Your item was delivered at 1:11 pm on June 06, 2007 in WASHINGTON,
DC 20009. A proof of delivery record may be available through your local
Post Office for a fee.

Additional information is stored in files offline.

A request to restore this information has been submitted and is currently
pending.

Track & Confirm

Enter Label/Receipt Number.

---

POSTAL INSPECTORS    site map    contact us    government services    jobs    National & Premier Accounts
Preserving the Trust    Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy

D-4

# Plaintiff's Exhibit E

One page, E-1
A photocopy of Herrick's demand letter delivered to Maguire's home but
refused and returned to Herrick.



Kevin Herrick
1601 Forbes Street
Rockville, MD 20851-1409

CERTIFIED MAIL

7006 3450 0001 8644 3252

:20036↑36 02

Refused
Parcel
6/22

Steven Maguire
Science Club
1130 17 Street NW
Washington, DC 20036

UNITED STATES
POSTAL SERVICE

0000          20036

U.S. POSTAGE
PAID
ROCKVILLE, MD
JUN 20 '07
AMOUNT
$3.06
0005847-23

E-1