## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

KEVIN DUNCAN HERRICK

    **Plaintiff,**

    **v.**

STEVEN M. MAGUIRE

    **Defendant.**

CIVIL ACTION NO. 07-1675
**Hon. James Robertson**

**RECEIVED**

NOV 1 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS

Plaintiff Kevin Herrick, proceeding pro se, moves the Court as follows:

1.    To deny Defendant's Motion to Dismiss because Defense has failed to show that Plaintiff's Complaint fails to state a claim against Defendant upon which relief can be granted.

DATED: November 13, 2007

Respectfully submitted,

Kevin Duncan Herrick
DC Bar #: 497519*
1601 Forbes Street
Rockville, MD 20851-1409
Tel: (301) 830-2695
pro se Plaintiff

*Although Mr. Herrick is an attorney admitted to practice law in the District of Columbia and is representing himself on a pro se basis, he is not admitted to this Court.

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**KEVIN DUNCAN HERRICK**
**Plaintiff,**

**v.**

**STEVEN M. MAGUIRE**
**Defendant.**

CIVIL ACTION NO.07-1675
**Hon. James Robertson**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The Plaintiff, Kevin Duncan Herrick, proceeding <u>pro se</u>, alleges and states as follows:

1. Defendant Maguire's Memorandum in Support of Motion to Dismiss ("Memorandum") seeks dismissal on the grounds that Plaintiff's Complaint fails under Federal Rule of Civil Procedure 12(b)(6) to state a claim for which relief may be granted. Defense Counsel makes a number of arguments based on technical deficiencies and even argues the plain language of the Contract between Herrick and Maguire indicates some unspecified past transaction, though the cancelled checks and Contract – all of which Defense has – indicate July 3, 2004 as the date Herrick gave Maguire $40,000.00 and both signed the Contract. Defense does not argue that Plaintiff cannot prove facts to

support claims made in his Complaint, but demands exact dates and other information contained in records to which Defense secured its own, exclusive access by demanding Herrick turn over all Tea Room documents in April, 2007 (Complaint, ¶29).

2. Furthermore, Defense attacks Plaintiff's Complaint, demanding dates and times that Plaintiff did in fact already provide. Defense Counsel has presented a Memorandum which fails not only to conform to the Federal Rules of Civil Procedure (Rule 10(b) "[a]ll averments of claim or defense shall be made in numbered paragraphs") but also fails to rise to the relevant legal standard in showing that this pro se Plaintiff cannot prove a set of facts entitling him to relief or that the Complaint, liberally construed, does not set forth claims entitling Plaintiff to relief for breach of the Contract and for Maguire's fraud, conversion and bad faith. Defendant's Motion to Dismiss should be DENIED.

## LEGAL STANDARD

3. Defense Counsel seeks to find technical deficiencies in Plaintiff's Complaint, alleging Plaintiff fails to state a claim for which relief may be granted under FRCP Rule 12(b)(6). "The complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir.1988); Grider v. Texas Oil & Gas Corp., 868 F.2d 1147, 1148 (10th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40

2

L.Ed.2d 90 (1974); <u>Meade</u>, 841 F.2d at 1526; <u>Morgan v. City of Rawlins</u>, 792 F.2d 975, 978 (10th Cir.1986)." (<u>Hall v. Bellmon</u>, 935 F.2d 1106 (C.A. 10(Okl.), 1991)).

4. The Hall Court also noted, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. <u>Haines v. Kerner,</u> 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); <u>Estelle v. Gamble,</u> 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); <u>Gillihan v. Shillinger,</u> 872 F.2d 935, 938 (10th Cir.1989). We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." (<u>Hall</u> at 1110, footnote omitted.)

## ARGUMENT

### A. Plaintiff's Fraud Claim (Count II) Properly States a Claim for Which Relief May Be Granted.

5. Defendant attacks Plaintiff's Count II fraud claim on two grounds, alleging Plaintiff (1) failed to allege provable damages, and (2) failed to plead with required particularity.

6. Count II of Plaintiff's Complaint asserts a claim for fraud based on two acts of fraud, (1) an Initial Fraud in which Defendant told Plaintiff he would provide substantially matching funds to Plaintiff's $40,000.00 in the Tea Room venture and made material omissions with regard to his outstanding tax liabilities, and (2) a Subsequent Fraud in which Defendant fabricated a lie in order to induce Plaintiff to loan him $17,000.00 in order to safeguard Plaintiff's original $40,000.00 and for the fraudulent purpose of paying an additional security deposit for the Lease on 1136 19th Street property.

7. Defendant argues Plaintiff's fraud claim should be dismissed for failure to allege provable damages with regard to the $17,000.00 loan (Subsequent Fraud) and for failure to plead the Complaint with required particularity with regard to the $40,000.00 (Initial Fraud) (see Defendant's Memorandum in Support of Motion to Dismiss, hereinafter "Memorandum", §§A(1) –A(2)) .

## I. Subsequent Fraud under which Maguire defrauded Herrick into loaning him $17,000.00 on or about October 12, 2007.

8. Defendant's Memorandum claims "Plaintiff's Complaint fails to allege 'provable damages' as to the $17,000.00 loan" (Memo, A(1)).  Defendant points out that with regard to the Subsequent Fraud, the $17,000.00 loan was repaid by $17,100.00 including $100.00 for Plaintiff's transaction costs associated with the loan (Memo, (A)(1), 2nd unmarked paragraph).

9. In detrimental reliance on Maguire's lies, intended to induce Herrick into loaning Maguire money,  Herrick offered Maguire a $17,000.00 unsecured, interest-free loan for Tea Room with the understanding that Tea Room would reimburse Herrick once its SBA loan came through and provide him $100.00 to cover Herrick's transaction costs.

10.  Once Maguire had spent Herrick's money on his own personal taxes and concluded the October 3, 2005 transaction to acquire Thai Bistro and the Lease, Maguire came to Herrick's home in Maryland and told Herrick that he had lied and that there never was an additional security deposit but that Maguire had used the money to pay his own personal back taxes (Plaintiff's Complaint, ¶23).

11.  Negotiations over the $17,000.00 loan were based on an unequal playing field as Maguire defrauded Herrick over the need for the loan and the purpose of the loan.

Herrick offered an interest-free loan and only sought to recover his out-of-pocket expenses (the $100.00) based on Maguire's lies (Plaintiff's Complaint ¶¶ 19-23).

12.   Since the negotiations were based on Maguire's fraud, the $100.00 cannot be presumed to represent Herrick's injury or taken as a bargained-for, if insufficient, compensation.

13.   In fact, the $100.00 represented Herrick's estimate of his own out-of-pocket cost to borrow the money, as was stated at the time and agreed to by Maguire. Herrick's own out-of-pocket cost does not represent the value of the loan to Maguire, it represents a lender's valuation of such a loan to Herrick. Herrick maintained impeccable credit and represented much less of a risk than did Maguire. Maguire did not borrow the money from a financial institution because he was unable or unwilling to pay the cost such a loan would bring from an informed, professional lender.

14.   Herrick's damages caused by Maguire's fraud include at the very least the difference between the $100.00 amount and the value of the loan to Maguire at the time, or the interest Herrick would have received from another use of the $17,000.00 for the duration of its loan to Maguire, or a fair market value for such a loan from a commercial lender.

15.   Plaintiff can provide hard evidence, or expert testimony establishing the actual value of the loan to Maguire, once Plaintiff has an opportunity to discover Maguire's actual financial condition at the time of this loan.

16.   The cost of a commercially available loan for Maguire in October, 2005 includes any origination fees, added charges, and interest for the duration of the loan. Herrick received none of this as a result of Maguire's fraud, Herrick received only a nominal sum

intended to counterbalance the actual out-of-pocket expense Herrick experienced (see Plaintiff's Complaint, ¶22).

17.    Rather than bargain honestly with an investor, rather than borrow the money from a commercially available lender, Maguire defrauded Herrick into loaning him $17,000.00. The value of that loan can be measured in the terms of Maguire's unjust enrichment or by determining a fair market value of the loan.  Plaintiff's out of pocket cost of $100.00 does not measure Plaintiff's damages nor does it represent the value of a loan to Maguire, it represents the estimated value of a loan to Herrick.  Once Plaintiff has appropriate access to Maguire's records and an accurate, honest assessment of Maguire and Tea Room's financial health in October, 2005, experts may be engaged to determine the value of this loan and of Maguire's unjust enrichment.

18.    Damages with regard to the Subsequent Fraud are certainly provable, definitely in excess of the negotiated $100.00 out-of-pocket amount, appropriate due to Defendant's fraud, and able to be calculated once Plaintiff can use discovery to acquire pertinent information.

## II.    Initial Fraud under which Maguire lied to Herrick about matching Herrick's $40,000.00 and omitted Maguire's outstanding tax liabilities.

19.    With regard to Maguire's Initial Fraud and the Contract Herrick and Maguire negotiated based on Maguire's fraudulent misrepresentations and material omissions, Defendant Maguire alleges Plaintiff's Complaint fails to plead with the required particularity (Memo, A(2) second unnumbered paragraph).

20.    Defendant states "Nowhere, however, does Plaintiff's Complaint state the time, place, or method of communication of the alleged misrepresentation." (Memo, A(2)).

21.  Herrick and Maguire discussed and negotiated terms of the pending Operating Agreement required by the Contract (Plaintiff's Complaint, Exhibit A) on multiple occasions.  It was during these discussions that the contributions and obligations of both Herrick and Maguire were negotiated and that Maguire told Herrick he would provide funds to match Herrick's $40,000.00.

22.  The earliest documented meeting during which Maguire told Herrick he would match Herrick's $40,000.00 with funds of his own occurred around May or June of 2004. Maguire and Herrick met with Maguire's attorney (not his current defense counsel, see Plaintiff's Complaint, ¶¶11,12).  Maguire can provide the name of the attorney and through his bills and attorney's records, the exact date.  Any records of this meeting are retained by Maguire since Maguire demanded Herrick return Tea Room documents in April of 2007.  This meeting is referenced in the Contract signed on July 3, 2004 (see Complaint, Exhibit A).

23.  Plaintiff's Complaint also provides Exhibit B, two proposed Operating Agreements which were discussed verbally by Herrick and Maguire as the documents were drafted (see Plaintiff's Complaint, ¶¶11,12,16).  These documents are dated December 19, 2004 and January 3, 2005.  As noted in Plaintiff's Complaint, Plaintiff resubmitted his proposed Operating Agreement to Maguire when Maguire breached the Contract on or about October 3, 2005 (Plaintiff's Complaint, ¶16).  Maguire told Herrick he would substantially match Herrick's $40,000.00 during these discussions of terms for the Operating Agreement required by the Contract.

24.  In April, 2007, Defendant demanded return of all Tea Room, LLC documents and Plaintiff complied (Plaintiff's Complaint, ¶29).  Plaintiff plans to seek production of

documents related to Maguire and Herrick's negotiations with Maguire's attorney and to determine the exact date of the meeting once discovery provides that opportunity. Defendant may also possess notes or drafts of proposals which contain evidence as to Defendant's fraud. Once again, Defendant has access to documents and records regarding the very dates he demands and Plaintiff does not have access to these records because Defendant required Plaintiff to return all Tea Room documents in April, 2007.

25.   Defendant also states, with regard to Maguire's Initial Fraud in negotiating the Contract and for Herrick's $40,000.00 that Plaintiff's Complaint failed to plead with particularity "because the Complaint fails to specify at what point in time that 'submission of funds' allegedly occurred." (Memorandum, §A(2) second unnumbered paragraph). Plaintiff's Complaint provided, in Exhibit A, a copy of the Contract, entitled "Receipt of Funds" dated July 3, 2004, which was signed when Herrick gave Maguire two checks, one for $5,000.00 (Plaintiff's Exhibit G, attached hereto) and one for $35,000.00 (Plaintiff's Exhibit F, attached hereto).

26.   Defendant also has access to bank records and to the cancelled checks for the $40,000.00. Plaintiff's Complaint states, in paragraph two, "At the time Herrick provided the funds, parties signed a contract." The Complaint then references Exhibit A, and continues, "[p]ursuant to the Contract, Herrick provided $40,000.00..." and "Herrick performed fully by transferring funds to Maguire. Maguire subsequently deposited Herrick's money in a business account at Adams National Bank maintained under the name of Tea Room" (Plaintiff's Complaint, ¶2, see also ¶11, inter alia).

27.   Plaintiff clearly provided the date he gave checks to Maguire in his Complaint and Defense Counsel has no excuse of which Plaintiff is aware for stating otherwise in

Defendant's Memorandum. Defense Counsel has an obligation not to make representations to this Court Counsel knows or should know to be false. Defense Counsel had bank records, canceled checks, and a contract all supporting the July 3, 2005 date alleged clearly and repeatedly in Plaintiff's Complaint as the date Herrick gave Maguire the $40,000.00.

28. As stated in Plaintiff's Complaint, Defendant deposited these funds into his Tea Room banking account at Adams National Bank and has easy access to copies of the checks as well as his own banking records to demonstrate the date these funds were transferred. Defense Counsel has an obligation under FRCP 11(b) not to make frivolous arguments, and is required under that same rule to exercise care in investigating facts to avoid making representations to the Court which Defense knows to be false.

## III. Defendant Maguire's ongoing material omissions.

29. Defendant also fails to address the material omissions Maguire made as part of this fraud. At issue was Maguire's financial condition and his ability to contribute funds to the opening of Science Club, his status as an investor in the Tea Room venture. Maguire not only misrepresented his ability to contribute funds matching Herrick's $40,000.00 but he also concealed his outstanding tax liability (Plaintiff's Complaint, ¶¶37,38). As to the effective date of this omission, Plaintiff has provided several key dates during which negotiations took place and has pled with sufficient particularity the times of this omission (see, inter alia, Plaintiff's Complaint, ¶¶10,11, Exhibit B).

30. Even as Maguire breached the Contract and used Herrick's funds to acquire Thai Bistro, the Lease, and the SBA Loan, Maguire continued to conceal his outstanding tax liability, as evidenced by his Subsequent Fraud in tricking Herrick into loaning him the

money to pay these outstanding taxes (Plaintiff's Complaint, ¶¶40,41). Defendant asks this Court to dismiss Plaintiff's Count II fraud claim without even addressing all aspects of the several frauds.

31.  Plaintiff asks this Court to DENY Defendant's Motion to Dismiss with regard to Plaintiff's Complaint, Count II, because Plaintiff has demonstrated that, he can prove damages with regard to the $17,000.00 Subsequent Fraud, and because Plaintiff has pleaded with sufficient particularity, Maguire's Initial Fraud, and because Defense did not at all challenge Plaintiff's allegation of Maguire's material omissions.

**B. Plaintiff's Conversion Claim (Count III) Properly States a Claim for Which Relief May Be Granted.**

32.  Count III of Plaintiff's Complaint asserts a claim for conversion against Maguire and Defendant's Memorandum first argues that Plaintiff failed to "claim a specific identifiable fund of money" (Memorandum, §B(1)).

I. **Specific, identifiable fund of money from which Maguire converted funds.**

33.  Plaintiff's Complaint states "Maguire took money out of Tea Room" and identifies fund(s) of money: (1) "cash from revenue" which may be identified by accessing the business' sales receipts and Point of Sales system (POS), less deposits and documented expenditures – in other words by subtracting the business expenses from the business revenue; (2) "a number of cashier's checks drawn on Tea Room's bank account" which may be identified by accessing Tea Room's Adam's National Bank and Eagle Bank records; (3) "other withdrawals from the bank account" meaning withdrawals from the Tea Room and Science Club business bank accounts accessible through bank records; (4) and "by use of the company's debit card" which is identifiable by examination of bank

records from Eagle Bank (Plaintiff's Complaint ¶44).  Plaintiff has identified the funds and exact dollar amounts will only become available once Plaintiff has access to Defendant's records through discovery.

34.  Plaintiff's Complaint further states Maguire obscured the amounts of money he took from Tea Room (Complaint ¶46) and must substantiate any monies he took as a reasonable salary (Complaint ¶45).

35.  Plaintiff has established the funds of money Maguire improperly took money from in this conversion.  Herrick was the sole, defrauded cash investor in the Tea Room, Science Club venture and as such, has a right to Tea Room and Science Club revenue and profit.

## II.  Misappropriation of some funds.

36.  Defendant alleges misappropriation as a defense; that the Defendant only misappropriated some percentage of the monies Plaintiff's Complaint says he stole. Defendant states, "much of Plaintiff's conversion claim appears to be predicated upon misappropriation of Tea Room, LLC's funds by the Defendant."  If, as Defense alleges, "much" of the claim is dependant on misappropriated monies, "some" of Plaintiff's claim is admitted to rest on stolen money.  As such, Defendant's misappropriation defense seems to fail on its face since Defense does not allege that Maguire stole nothing, only that most of what Plaintiff believes he stole was simply "misappropriated" (see Memorandum, B1, second to last unnumbered paragraph).  The amount of misappropriated funds versus stolen funds is a question of fact ascertainable at trial.

37.  The exact amount Maguire stole from Herrick through his improper taking of money from Tea Room is a question of fact ascertainable only by a close inspection of all

pertinent financial records for Tea Room, Science Club, and Maguire. Plaintiff intends to conduct such an investigation to determine exact amounts through discovery and with the help of a certified finance professional.

### III. Plaintiff seeks not some technical tax "attribution" but that funds be accounted for and, since Maguire stole monies from the business, that unaccounted for funds be considered Maguire's own income through conversion.

38. Defendant alternatively argues that Plaintiff's conversion claim sounds in law, not equity and that attribution is an equitable remedy (Memorandum, B(2)). Defense quotes caselaw stating "The traditional standard for calculating damages for conversion is the fair market value of the property at the time of the conversion." (Memorandum, B(2) second unnumbered paragraph, quoting Duggan, 554 A.2d at 1137-38). Plaintiff seeks to determine precisely that – the value of the property at the time of conversion – and cannot do so without full access to all relevant financial documents.

39. Plaintiff is seeking attribution in the sense that, from an accounting perspective, money that Plaintiff took from Tea Room is attributed to him as either salary or excess money improperly taken. Plaintiff is only seeking to figure out how much income Maguire improperly took and to recover some if not all of that income as his due under the theory that Herrick provided the cash to start Tea Room and Maguire stole the profits to which Herrick is justly entitled. That seems pretty clear upon a simple reading of Plaintiff's Complaint paragraph 47, Defense seems to be misreading some technical meaning into pro se Plaintiff's plain language Complaint.

12

40. While it may be impossible, prior to a close examination of financial records, to determine exact amounts, since Maguire took money out of Tea Room, deliberately disguised his own income and repeatedly took cash from Science Club revenue, and since Maguire refused to draw a regular salary, it is certain Maguire did improperly take funds to which Herrick has a claim. In Count III of Plaintiff's Complaint, Plaintiff seeks to determine that amount and lay claim to it, asking the Court to order recovery for Herrick "of any income in excess of a reasonable salary due Maguire." (Complaint, ¶ 47).

## IV. Punitive damages are appropriate for Maguire's conversion; conversion is an intentional property tort and Maguire's conduct is outrageous.

41. With regard to Plaintiff's request that the Court award punitive damages for Defendant Maguire's conversion, Defense argues that Plaintiff did not claim the theft occurred with actual malice. Defense cites Calvetti v. Antcliff, 346 F.Supp. 2d 92, 108 (D.D.C. 2004) stating that in the District of Columbia "punitive damages are normally available only in actions arising from intentional torts." Conversion is an intentional property tort. Defendant's own case citation and quote supports the appropriateness of this Court's awarding punitive damages as conversion is an intentional tort (see Memorandum, B(3)).

42. Defendant quotes Robinson v. Sarisky, 535 A.2d 901, 906 (D.C. 1988), requiring establishment that the tort was committed with 'an evil motive, actual malice, deliberate violence or oppression' or 'for outrageous conduct in willful disregard for another's rights.' (Memorandum, B(3)). Plaintiff's Complaint tells how Defendant lied to Plaintiff about matching a $40,000.00 sum from Plaintiff in order to induce Plaintiff to give him $40,000.00 for starting a business. Then Defendant took the money, breached the

Contract between the two, started the business, defrauded Plaintiff into loaning him $17,000.00 more, refusing all along to comply with the Contract and sign an operating agreement, stole money from the business, refused to repay Plaintiff even the original $40,000.00, and now claims sole ownership over a million dollar per year business started with Plaintiff's cash. Defendant's conduct is truly "outrageous conduct in willful disregard for another's rights."

43.   Defendant's repeated fraud and repeated refusal to execute an Operating Agreement with Herrick despite repeated demands over a course of years indicates clearly that Defendant acted with an evil motive. Defendant's disguising of his income and refusal to draw a regular salary is indicia of a pattern of nefarious, underhanded, and devious behavior.

44.   Maguire claims 100% ownership of a business which generates about a million dollars per year in revenue and he acquired this ownership through repeated and sustained lying, stealing, and cheating. Punitive damages for his continued conversion are entirely appropriate and Plaintiff's Count III is clear in its goal to identify, account for, and seek recovery of these funds.

45.   Plaintiff asks this Court to DENY Defendant's Motion to Dismiss with regard to Plaintiff's Count III, conversion.

## C. Plaintiff's Breach of Contract Claim (Count I) Properly States a Claim for Which Relief May Be Granted.

46.   Defendant claims that the first line of the Contract signed by Maguire and Herrick indicates that, at some point in the past, Herrick had already given Maguire the $40,000.00 and that the conditions and stipulations in the Contract were added to any

agreement made at that time in the past. Defendant's evidence relies on an interpretation of the first line of the Contract, "[t]his document acknowledges receipt of the sum of $40,000.00 paid by Kevin Herrick to Steve Maguire." Defendant argues that this line indicates some point in the past, when in fact it indicates that the Contract accompanied the $40,000.00 and that the signing of the Contract and Herrick's providing Maguire with two checks adding up to $40,000.00 occurred simultaneously. Defense Counsel's argument might only seem fanciful if Defense did not know this entire argument to be without merit and completely false.

47.  Defense seems to be making some grammatical argument that the tense of this sentence is relevant and indicates some point in the past. Defendant quotes cases which have to do with added stipulations or additional guarantees amended to a previous agreement. Defense does not allege the existence of a previous agreement. Defense does not allege a point in time prior to the signing of this Contract that the transfer of the $40,000.00 took place. Defense does not deny having received the $40,000.00 nor does Defense allege another agreement applies. It is somewhat unclear what Defendant is proposing as a defense other than that, perhaps, the $40,000.00 was an unconditional gift, but even that is unclear.

48.  Once again, with regard to this transfer of $40,000.00 by way of bank checks, deposited into Maguire's Tea Room bank account at Adams National Bank, Defendant has easy access to the cancelled checks bearing the date of disbursal. Plaintiff also provided a copy of the Contract (Plaintiff's Complaint Exhibit A) bearing its date.

49.  Herrick gave Maguire two checks, one was a personal check for $35,000.00 from Herrick's bank account and the other was a $5,000.00 check written to Herrick from his

brokerage account, which he signed over to Maguire. Maguire received both checks in consideration for the Contract, on July 3, 2004. Plaintiff Herrick provides attached to this Memorandum a copy of the cancelled check for $35,000.00 (Exhibit F) bearing the same date as the Contract, July 3, 2004 and showing July 6, 2004 as the date the funds were transferred into Defendant's Tea Room banking account at Adams National Bank. Plaintiff also includes the check he signed over to Maguire for $5,000.00 also given to Maguire on July 3, 2004, with funds transferred into Maguire's Adams National Bank account on July 8, 2004 (Exhibit G).

50.  Defendant lists some caselaw about prior oral agreements but alleges no prior oral agreement, nor does Defendant contend this Contract is an integration or memorialization of a previous agreement.

51.  Plaintiff's Complaint clearly states that Herrick provided the $40,000.00 at the time the Contract was signed (Plaintiff's Complaint, ¶¶2,10,11). The plain language of the Contract indicates this, acknowledging receipt of money paid by Herrick to Maguire. "This document acknowledges receipt of the sum of $40,000.00 paid by Kevin Herrick to Steve Maguire." The name of the document, "Receipt for funds" is also indicates the contemporaneous transfer of funds in exchange for a receipt. Nothing indicates that funds were transferred at some point in the past.

52.  A disagreement over the date of transfer of funds would be an issue to be addressed at trial and not appropriate for a motion to dismiss. Defendant attempts to conjure some special meaning from a Contract Maguire knows was signed contemporaneously with the issue of funds and, especially since Defendant has copies of the cancelled checks and a

copy of the Contract, both bearing dates, Plaintiff wonders that Defense Counsel would waste the Court's time in raising this defense.

53.   Defense Counsel has an obligation under Federal Rules of Civil Procedure 11(b) to exercise appropriate care in making representations to the Court, "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…" In this instance, with a copy of the Contract (dated July 3, 2004), easy access to cancelled checks demonstrating not only the date of the writing (July 3, 2004) and signing over of the checks as well as the date of actual funds transfer (July 8, 2004), Defense Counsel had an obligation to confirm an allegation based on previous transfer before wasting the Court's time with some frivolous, grammatical argument.  Defense Counsel did not conduct "an inquiry reasonable under the circumstances" and Plaintiff asks this Court to consider appropriate sanctions under FRCP 11.

54.   Plaintiff asks this Court to DENY Defendant's Motion to Dismiss with regard to Count I and to consider appropriate sanctions under FRCP 11 for Defense Counsel's conduct as noted above.

## D. Plaintiff's Quantum Meruit Claim in the Alternative (Count IV) Properly States a Claim for Which Relief May Be Granted.

55.   The legal standard by which to evaluate Defendant's Motion to Dismiss this pro se plaintiff's Complaint remains the same as above.  Plaintiff points out that Count IV of the Complaint was properly pled in the alternative, though Defense Counsel seems not to have acknowledged this fact.

56.   Plaintiff's quantum meruit claim is pled in the alternative (Plaintiff's Complaint, ¶49).  If this Court determines for any reason that the written Contract does not entitle Plaintiff to recovery, Plaintiff included this plea in the alternative to recover against Maguire on simple, quantum meruit grounds, since a quantum meruit argument is not normally appropriate where a written contract exists.

I.   **Plaintiff provided money to start Tea Room, a valuable service for which he advised Defendant Plaintiff expected to be compensated.**

57.   Defendant states that Plaintiff will not prove that he performed a valuable service for Defendant.  Plaintiff provided $40,000.00 which Defendant used to start up his business, Tea Room, LLC and Science Club as well as an additional $17,000.00 which Defendant used to pay his personal back taxes (Plaintiff's Complaint, ¶50).

58.   Plaintiff not only negotiated over terms of several versions of proposed operating agreements with Maguire, but Maguire brought Herrick to a meeting with Maguire's own attorney (not his current Defense Counsel) to discuss terms of an operating agreement which always included compensation and equity ownership for Herrick in Tea Room, LLC and its ventures.  Plaintiff further noticed Maguire through repeated demands Maguire sign an operating agreement after Maguire improperly used Herrick's $40,000.00 in violation of the plain-language terms of the Contract (see Exhibit B).

II.  **Defendant benefited from Plaintiff's service.**

59.   Defendant certainly used Plaintiff's cash to start his business and to open Science Club (Complaint, e.g. ¶20).  Defendant's own documents will prove his use and enjoyment of Plaintiff's money once Plaintiff has had a chance to seek production through discovery of Maguire and Tea Room, LLC/Science Club's financial records.

60. Plaintiff's Complaint alleges that Maguire lied about his own financial standing, paid his back taxes, and opened Science Club with Herrick's money. Defendant's bad faith and repeated refusal to sign an operating agreement despite his contractual obligation to do so before using Herrick's $40,000.00 resulted in his continued claim of one hundred percent ownership over Science Club and Tea Room, LLC, a business with about a million dollars in revenue (Plaintiff's Complaint, ¶¶15,17,47).

61. Plaintiff's Complaint documents Maguire's repeated refusal to sign an operating agreement (and thereby officially acknowledge Herrick's equity interest in Science Club, among other things) (see Plaintiff's Complaint, ¶¶3,12,13,15,22,25,28,29,30). The unjust nature of Maguire's enrichment is manifest throughout the Plaintiff's Complaint, as is his refusal to honor his promises – among them the promise to sign an operating agreement with Herrick.

## III. Named defendant does not include Tea Room, LLC, Maguire's only significant personal property.

62. Defendant Maguire alleges Plaintiff's requested remedies fail as a matter of law. Plaintiff named only Steven Maguire as Defendant and did not include Tea Room, LLC or Science Club as Defendants since Maguire claims sole ownership of Tea Room and Science Club and since these are his only significant assets.

63. Plaintiff seeks an appropriate award against Maguire and in favor of Herrick so that Herrick may recover under a quantum meruit claim against Maguire in the event an alternative grounds is necessary and appropriate. Since Maguire has no other significant assets and since the object of Maguire's unjust enrichment is Tea Room, LLC and Science Club, and since Maguire claims one hundred percent ownership of these,

Plaintiff seeks control of, equity ownership of or interest in and ultimately dissolution of Science Club in order to recover monies due him as deemed appropriate by this Court. If this Court deems such an award is improper, Plaintiff seeks an appropriate award as determined by this Court.

64.  Plaintiff asks this Court to DENY Defendant's Motion to Dismiss with regard to Plaintiff's Complaint Count IV, quantum meruit.

65.  Defendant Maguire has lied to and defrauded Plaintiff Herrick repeatedly and constantly throughout their business relationship. By Defendant's own admissions and through the course of operating as Science Club's book keeper for about fourteen months, Herrick uncovered a number of these lies.

66.  When Herrick ceased to operate as Science Club's book keeper on or about April 15, 2007, Maguire demanded the return of all Tea Room documents, records, and related property. Herrick complied with this demand as he complied with all of Defendant's demands notwithstanding Defendant's refusal to make good on his own promises.

67.  Now Defendant Maguire seeks to dismiss Plaintiff Herrick's suit for lack of particular dates stored in records Defendant holds and Plaintiff does not have access to due to Defendant Maguire's own demands. Defendant should be estopped, at some level, from demanding information to which he has secured exclusive access, at least prior to Plaintiff's opportunity to discover such information. Defense Counsel should be required to exercise proper care in making representations to this Court which are contradicted by written evidence and records to which Defense has easy, and in some cases, exclusive, access.

68.  Plaintiff asks this Court to DENY Defendant's Motion to Dismiss in its entirety.

WHEREFORE, Plaintiff Kevin Duncan Herrick respectfully requests that this Court enter an Order denying Defendant's Motion to Dismiss.

Dated: November 13, 2007.

Respectfully submitted,

Kevin Duncan Herrick
DC Bar #: 497519*
2478 Sandell Drive
Dunwoody, GA 30338-4548
Tel: (301) 830-2695
pro se Plaintiff

*Although Mr. Herrick is an attorney admitted to practice law in the District of Columbia and is representing himself on a pro se basis, he is not admitted to this Court.

PLAINTIFF'S EXHIBIT F



KEVIN HERRICK    07/99
2478 SANDELL DRIVE
DUNWOODY, GA 30338

54-7133/2611

0856

Date July 3, 2004

Pay to the
Order of    TEA ROOM, LLC    $ 35,000.00

thirty five thousand    Dollars

ASSOCIATED CREDIT UNION
ATLANTA, GA.

For

⑆26 11 71 338⑆  3000 12 1883⑆  0856    ⑈0003500000⑈

Account:300012883 Serial:856 Amount:$35,000.00 Trace/Sequence:40495440 Routing/Transit:261171338 Date:07/08/2004



0040495440
THE ADAMS NATIONAL BANK
WASHINGTON, DC

F-1

## PLAINTIFF'S EXHIBIT G



## CERTIFICATE OF SERVICE

I, Kevin Herrick, hereby certify that, on November 13, 2007, I caused a true and correct copy of the foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, Motion to Deny Defendant's Motion to Dismiss, and proposed Order to be served as follows:

*by First Class Mail, postage prepaid to:*
Brooke Falk-McEnery, Counsel for Steven Maguire
Thompson Hine LLP
1920 N Street, N.W., Suite 800
Washington, D.C. 20036

Kevin Herrick

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

KEVIN DUNCAN HERRICK

   Plaintiff,


   v.


STEVEN M. MAGUIRE

   Defendant.

CIVIL ACTION NO.  07-1675
**Hon. James Robertson**

## ORDER

UPON CONSIDERATION of Defendant's Motion to Dismiss, and Plaintiff's Opposition thereto, it is hereby

**ORDERED** that Defendant's Motion to Dismiss is **DENIED**.

JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE